IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

CASSIE OWENS and JOHNNY OWENS,   Case No. 2:22-cv-00119-HL

       Plaintiff,

v.   **OPINION AND ORDER**

STATE FARM FIRE AND CASUALTY
COMPANY,
       Defendant.

_____

HALLMAN, United States Magistrate Judge:

    Plaintiffs Cassie and Johnny Owens ("Owens") seek attorney's fees against Defendant State Farm Fire and Casualty Company ("State Farm") stemming from an insurance coverage dispute. Pl. Memo. in Supp. of Pl. Mot. Att. Fees and Costs ("Pl. Mot."), ECF 25.[1] For the

---

[1] The caption of the Owens' motion indicates that they are moving for both fees and costs; however, no cost bill was submitted and, as a result, this Court has no basis to award costs.

PAGE 1 – OPINION AND ORDER

following reasons, the Court GRANTS the Owens' motion in part and awards **$142,612.50** in attorney's fees.

## BACKGROUND

The Owen's home caught fire on April 5, 2021, damaging the attic and personal property and causing later water damage. Trent Decl. 2, ECF 36-10; Owns Decl. ¶ 4, ECF 47. The Owens called their insurer, State Farm, that day to report the fire damage. Trent Decl. 2. State Farm examined the home two days later and sent the Owens a letter explaining the available policy benefits. Trent Decl. 2.

The parties' dispute centers around when the Owens effectively submitted proof of loss after their house caught fire. The Owens claimed that State Farm failed to pay $275,000 in structural benefits, $220,000 in personal property benefits, and $50,000 in temporary living benefits. Compl., ECF1-1. The Owens contend that they submitted proof of loss when they contacted State Farm, letting it know the house had caught fire. Pl.'s Mot. 4. State Farm disputes the Owens' proof of loss for Coverage A (structural), B (personal property), and ALE (cost of living) benefits. State Farm argues the Owens did not submit Proof of loss for personal property benefits until they submitted their Coverage B inventory because State Farm had no other way of effectively estimating what personal property the Owens had lost. Def.'s Resp. 12–13. State Farm also argues the Owens did not submit proof of loss for Coverage A code upgrades until the contractor submitted its estimate for the cost of requested code upgrades. *Id*. Finally, State Farm argues they paid all ALE benefits within six months of receiving receipts for those costs from the Owens. *Id.* at 13–14.

The Owens filed suit in Baker County Circuit Court on January 7, 2022, alleging one count of breach of contract. Compl., ECF 1. State Farm removed the action to this Court shortly

PAGE 2 – OPINION AND ORDER

thereafter. ECF 1. On April 4, 2022, the Owens filed an Amended Complaint that included a tort claim for State Farm's alleged breach of the covenant of good faith and fair dealing. First Am. Compl., ECF 16.

On August 9, 2022, following a Judicial Settlement Conference with Magistrate Judge Youlee You, State Farm agreed to provide an insurance recovery in the amount of $435,000 to the Owens. Pl. Mot. 3. The parties agreed to separately negotiate attorney's fees. *Id*. Judgment was entered in this matter on November 8, 2022. ECF 32. The parties were unable to resolve the attorney fee issue, and this motion followed.

## DISCUSSION

### I.      Entitlement to Attorney's Fees

State Farm asserts that the Owens are not entitled to attorney's fees because they did not demonstrate sufficient proof of loss, as required by ORS 742.061. They also assert that they are not entitled to attorney's fees spent litigating their tort claim.

#### A.      Legal Standards

Oregon law governs whether attorney fees are available in this case because this is a state law insurance dispute. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the Erie doctrine. . . ."). The parties do not dispute that Oregon law controls this issue.

The Owens move for fees under ORS 742.061, which provides, in relevant part:

> [Subject to exceptions that do not apply here], if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

ORS § 742.061(1). In other words, a plaintiff-insured seeking fees must satisfy four conditions:

PAGE 3 – OPINION AND ORDER

> '(1) [the insured] must have filed a proof of loss with its insurer; (2) settlement must not have occurred within six months of filing of that proof of loss; (3) [the insured] must have brought a court action upon the policy; and (4) [the insured] must have ultimately recovered more than the amount of any tender made by [the insurer] in the action.'

*Strugari v. Sagamore Ins. Co.*, No. 3:20-CV-00956-SB, 2023 WL 3002442, at *2 (D. Or. Apr. 19, 2023) (quoting *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-cv-00239-HZ, 2014 WL 837389, at *1 (D. Or. Mar. 3, 2014).

### B.     Proof of Loss

State Farm challenges the Owens' entitlement to attorney's fees based on the first factor, proof of loss for Coverage A (structural), Coverage B (personal property), or ALE benefits. Proof of loss has a functional and fact-specific definition. *Parks v. Farmers Ins. Co.*, 347 Or. 374, 380-81 (2009). "Any event or submission that would permit an insurer to estimate its obligations [after reasonable investigation] is effective 'proof of loss.'" *Id.* Thus, if the plaintiff provided enough information that the insurer could estimate its obligations through a reasonable investigation, the plaintiff has provided sufficient proof of loss. *Id*.

The Court agrees with State Farm that the Owens had not submitted sufficient proof of loss for damaged personal property until they submitted the Coverage B inventory. This issue was previously decided in *State Farm Fire & Cas. Co. v. Jensen*, 604 F. Supp. 3d 1096, 1112–13 (D. Or. 2022). In that case, as here, the home had caught fire and personal property was damaged in the process. The court explained that only after the plaintiff submitted the personal property inventory did he provide adequate proof of loss because the insurer had no other way of accurately estimating the damage to the plaintiff's personal property. Knowledge of the personal property that was originally in the house and damaged by the fire was in the sole possession of the plaintiff. Thus, the insurer could not adequately estimate its obligations until the plaintiff

submitted the Coverage B inventory and told the insurer what personal property was damaged. *Id.*

This case is the same. State Farm again has no way of knowing all the personal property that was originally in the home and damaged by the fire without the Owens Coverage B inventory or a similar disclosure. Even if the Owens' Complaint in this action could have fulfilled those requirements, the Complaint only stated, "Coverage B – Personal Property: Defendant has issued payment in the approximate amount of $33,000 and is liable for an additional $225,000." This unsupported and nonspecific allegation is insufficient for State Farm to reasonably estimate its liability. Thus, the Owens had not submitted sufficient proof of loss until it submitted the inventory. State Farm paid the full amount of these claims within six months after the Owens submitted this inventory. The Owens are not entitled to attorney's fees for recovery of the Coverage B damages.

In contrast, State Farm could have accurately estimated its Coverage A obligations, including costs associated with bringing the repairs up to code. State Farm argues it was unable to make these estimates without the contractors bid of work. Def.'s Resp. 13. But State Farm failed to explain why it could not create its own independent estimate, including additional costs related to bringing the repairs up to code. State Farm does not dispute that it made an initial estimate and paid more than this estimate for Coverage A benefits after the six-month period. Because State Farm did not need information only the Owens could provide to make these estimates, the Owens' original notice of the fire was sufficient proof of loss. Thus, the Owens are entitled to attorney's fees for their recovery of additional Coverage A benefits.

Similarly, State Farm failed to pay *all* ALE benefits within six months. State Farm asserts that they paid all ALE benefits within six months of the Owens submitting receipts for coverage.

PAGE 5 – OPINION AND ORDER

Def.'s Resp. 13-14, ECF 36; Trent Decl. 5 (stating State Farm had timely paid all benefits, including Coverage B and ALE it had documentation to support). However, the Owens assert that one round of receipts was not paid within six months and was part of the settlement award. Pl.'s Reply 23; Owns Decl. ¶ 9 (stating State Farm failed to pay ALE coverage for receipts submitted in December 2021). Because State Farm did not move to rebut this evidence, the Court will award this time to the Owens based on this unrebutted additional evidence.

      C.      **Tort Claim**

This Court agrees with State Farm that the time spent litigating the tort claim is not recoverable. Def. Resp. 14-15. When a "plaintiff's claim [is a] tort, [it] is not an action on an insurance policy. Therefore, [the] plaintiff is not entitled to an award of attorney fees under ORS 742.061." *Goddard v. Farmers Ins. Co. of Oregon*, 177 Or. App. 621, 623 (2001) (cited by *Wiltshire v. Farmers Ins. Co. of Oregon*, 312 Or. App. 449, 450, *review denied,* 368 Or. 703 (2021) for the same proposition). As a result, the Owens are not entitled to attorney's fees on time spent litigating their tort action.

**II.    Amount of Fees**

      A.      **Applicable Law**

ORS § 20.075 provides that "[a] court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute." Or. Rev. Stat. § 20.075(2). Those eight factors are:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

> (b) The objective reasonableness of the claims and defenses asserted by the parties.

PAGE 6 – OPINION AND ORDER

>(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
>(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
>(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
>(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
>(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
>(h) Such other factors as the court may consider appropriate under the circumstances of the case.

*Id.* § 20.075(1).

Section 20.075 provides that in addition to the eight factors under subsection (1), a "court shall [also] consider the [eight] factors [in subsection (2) of this section] in determining the amount of an award of attorney fees in those cases" in which an award of attorney fees is authorized or required by statute. *Id.* § 20.075(2); *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-00087-SI, 2018 WL 3873575, at *1 n.1 (D. Or. Aug. 15, 2018). Those eight subsection (2) factors are:

>(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
>(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
>(c) The fee customarily charged in the locality for similar legal services.
>
>(d) The amount involved in the controversy and the results obtained.
>
>(e) The time limitations imposed by the client or the circumstances of the case.

PAGE 7 – OPINION AND ORDER

>(f) The nature and length of the attorney's professional relationship with the client.
>
>(g) The experience, reputation and ability of the attorney performing the services.
>
>(h) Whether the fee of the attorney is fixed or contingent.
>
>(i) Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice.

Or. Rev. Stat. § 20.075(2).

When analyzing the factors under § 20.075, "a court should 'includ[e] in its order a brief description or citation to the factor or factors on which it relies.'" *Foraker*, 2018 WL 3873575, at *2 (quoting *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or. 84, 96 (1998)). A court, however, typically has "no obligation to make findings on other statutory criteria that play no role in the court's decision." *McCarthy*, 327 Or. at 96.

"Under ORS § 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged, and factor (d) generally informs whether an upward or downward adjustment might be appropriate." *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-CV-87-SI, 2018 WL 3873575, at *2 (D. Or. Aug. 15, 2018). Taken together, these factors are comparable to what is often referred to as the "lodestar" method for calculating a reasonable attorney's fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (holding that the lodestar method yields a presumptively reasonable fee, subject to upward or downward adjustment as appropriate); *see also Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 221 (2013) ("The lodestar approach that the parties have used is at least a permissible one under the statutes involved," including Or. Rev. Stat. § 20.075); *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*,

PAGE 8 – OPINION AND ORDER

255 Or. App. 525, 554 (2013) ("The lodestar method that the trial court used is a commonly applied and permissible approach for determining the reasonableness of a fee award . . . .").

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). In making this calculation, the district court should consider various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

After determining the number of hours reasonably spent, the district court calculates the reasonable hourly rates for the attorneys and paralegals whose work comprises the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the attorneys' or paralegals' experience, skill, and reputation. *Id.*

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing rate surveys. One useful survey is the Oregon State Bar 2022 Economic Survey ("OSB 2022 Survey"), which contains data on attorney billing rates based on the type of practice, geographic area of practice, and years of practice. A copy of the OSB 2022 Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf (last visited on June 8, 2023).[2]

B.      ORS 20.075(1) Factors

The ORS 20.075(1) factors "do not inform the proper disposition of this particular fee petition." *Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 225 n.11 (2013).

The Owens assert that each of these factors favor a large fee award, primarily based on the "wrongful" conduct of State Farm and their unfair actions during claims the settlement process. Pl. Mot. 12. State Farm counters that, under factor 1(e), it was the Owens who acted unreasonably because they were responsible for some of the water damage the house experienced, inflating the recovery failed to provide State Farm with timely and accurate information, and under factor 1(f), State Farm diligently attempted to settle with the Owens. Def. Resp. 19-20.

---

[2] The parties' briefing addresses the 2017 OSB economic survey, as the 2022 survey was not published at the time of their briefing. This Court will rely on data from the 2022 economic survey because it specifically covers some of the time periods spent litigating this matter

The limited record before this Court demonstrates that both parties effectively advocated for their position in a reasonable manner and reached an efficient settlement. State Farm initially paid some of the claims and, once this litigation commenced, promptly reached a resolution on the remaining amount of the claim. This was not unreasonable. On the other hand, State Farm cannot now take issue with the Owens' conduct in seeking recovery when they ultimately paid them a significant portion of the damages ultimately sought rather than litigate whether the Owens were entitled to that recovery based on their alleged conduct. Accordingly, the first-step factors are "neutral because both parties reasonably and diligently pursued their respective claims and defenses." *See Alexander*, 688 F. Supp. 2d at 1182.

### B.     ORS 20.075(2) Factors

This Court next calculates the presumptively reasonable rate using the lodestar calculation and concludes that the lodestar figure adequately captures all ORS 20.075(2) factors.

#### 1.     Total Number of Hours for Merits Litigation.

State Farm raises two arguments for a reduction in the total number of the Owens' requested hours: First, it argues the Owens should not be able to collect on any counts or issues they are not entitled to fees for. Def.'s Resp. 16. And second, they argue there is duplicative and administrative work that should be excluded under 20.075(2). *Id*. at 21-22.

##### a.     Apportionment

"When a party prevails on . . . a claim for which attorney fees are authorized and a claim for which they are not, the court must apportion the fees incurred for each claim. . . . [Unless the claims] involve common legal issues . . . [such that] the party . . . would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 284 Or. App. 133, 144 (2017); *see also Hoffman v. Foremost Signature Ins.*

*Co.*, 6:12-CV-01534-MC, 2014 WL 911274, at *3–4 (D Or Mar 10, 2014) (apportioning attorney's fees under ORS 742.061 based on the counts for which the plaintiff was entitled to fees). However, "[w]hen there are common issues, apportionment of attorney fees among different claims or parties may not be required." *Bush v. City of Prineville*, 325 Or. App. 37, 58 (2023). In short, the court attempts to estimate the amount of time it took the plaintiff to litigate the specific issues entitling them to fees. *See Freedland v. Trebes*, 162 Ore. App. 374, 378 (1999) ("fees can be awarded only for the time reasonably necessary to prevail" on the claims that support the fee award).[3]

Here, all time entries that specifically relate to the negligence claim and Coverage B Claim are unrecoverable because those hours were unnecessary for the Owens to succeed on their fee-bearing claims. The Court has examined the billing statement and removed the following hours related to these uncoverable claims: 6.3 Hours of Robert E.L Bonaparte's time, 1.3 hours of Brooke Calcagno's time, and 10 hours of Rob Bonaparte's time related to inventory and the Coverage B claim; and 17.1 hours of Robert E.L. Bonaparte's time, 3.3 Hours of Stephen Leggatt's time, and 3.8 hours of Brooke Calcagno's time related to the negligence claim, amending the pleadings, and gathering medical evidence. This totals a reduction of 23.4 hours for Robert E.L. Bonaparte, 3.3. Hours for Mr. Leggatt, 5.1 hours for Brooke Calcagno, and 10 hours for Rob Bonaparte.

---

[3] A prime example of where time spent litigating a non-fee earning issue will count towards the fee award is when that issue is "materially and reasonably related" to the fee earning issue. *Matter of Marriage of Baertlein & Stocks*, 303 Or. App. 51, 76 (2020). In these cases, the fee applicant essentially had to litigate the non-fee earning issue to win on the fee earning issue. Thus, that time was essential for success on the fee earning issue and should count towards the fee award. *Id.* (holding mother's time litigating enforcement issue should count toward fee award under modification issue because the court had to decide the modification issue to determine the enforcement issue).

PAGE 12 – OPINION AND ORDER

### b. Excluding Duplicative Work Under ORS 20.075(2)(a)

The Court must consider "The time and labor required in the proceeding . . ." ORS 20.075(2)(a) "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09–CV–00239–HZ, 2014 WL 837389, at *5 (D. Or. Mar. 3, 2014), *aff'd*, 649 Fed. Appx. 585 (9th Cir. 2016) (citations omitted). "Generally, when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252 (citation and internal quotation marks omitted); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (upholding a district court's finding under federal law that intra-office conferences were "unnecessary and duplicative").

Here, State Farm argues many of the billing entries are duplicative or relate to attorney communications between one another. The two entries the Court sees as duplicative instead of building off the prior attorney's work are when Mr. Leggatt was on the same call as Mr. Bonaparte for .3 hours with the Court and .5 hours with clients. The Court does not find it unreasonable that both attorneys attended settlement discussions.

The Court does not find any of the communications between attorneys were unreasonable or duplicative given their minimal occurrence, and that most also involved other parties and would have needed to occur anyway.

The Court omits seven hours of Mr. Bonaparte's travel because Mr. Bonaparte's full rate for having to travel a good portion of the state would be excessive. *See Anderson v. Sullivan*, 311 Or. App. 406, 411, *review denied,* 368 Or. 702 (2021) (upholding district court's reduction of attorney's full rate in fees for travel from Portland to rural Oregon).

Finally, State Farm argues many billed tasks are clerical in nature and not properly billed as attorney's fees. Def.'s Rep. 21. "Tasks which are clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by counsel." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1251. "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 03:09-cv-00555-AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010). The Court reduces an additional .4 Hours of Brooke Calcagno's time for scheduling an inspection and does not find any non-previously deducted time to be clearly clerical in nature.

In sum, this Court concludes that reasonable hours for litigating the merits issues entitling the Owens to attorney's fees are 153.4 for Robert E. L. Bonaparte, 52.2 hours for Mr. Leggatt, 7.8 hours for Brooke Calcagno, and 10.6 hours for Rob Bonaparte.

### 2. Reasonable Hourly Rate

The Owens argue they are entitled to attorney's fees at reasonable rates for practitioners in Portland because they were unable to find an attorney of sufficient caliber for this case in Baker City. Pl.'s Reply 5–6. Portland attorneys Robert Bonaparte and Stephen Leggatt seek an hourly rate of $650.00 and $550.00, respectively, and paralegals Brooke Calcangno and Rob Bonaparte seek an hourly rate of $175.00 and $150.00, respectively. Pl. Mot. at 8. Mr. Bonaparte and Mr. Leggatt support their request with detailed affidavits describing their qualifications in this matter. Bonaparte Decl., ECF 28; Leggatt Decl. ECF 27. State Farm does not dispute counsels' experience or qualifications. Rather, it asserts that there are many firms closer to Baker City that charge more reasonable rates that the Owens could have gone to, so they should only be

entitled to fees customarily charged in the Baker City Area, which they assert is $250.00 to $375.00 per hour. Def.'s Resp. 23.

This Court finds the Owens are entitled to the fees customarily charged in Oregon in general. Oregon courts have held it is an abuse of discretion for district courts to limit fee rates on the basis of being able to find less expensive counsel in rural Oregon because the fees must only be reasonable for Oregon in general, not rural Oregon in specific. *Robinson v. DeFazio*, 284 Or. App. 98, 108 (2017) ("Defendant was not required to employ less costly local counsel to litigate the case to be entitled to a reasonable award of attorney fees. The evidence submitted by the defendant established that his attorneys had reasonable hourly rates for Oregon."). Additionally, when the case is too difficult to be litigated by attorneys in the plaintiff's geographic area, courts have used the locality of the plaintiff's attorneys. *See Hanna Ltd. P'ship v. Windmill Inns of Am., Inc.*, 223 Or. App. 151, 166 (2008) (holding district court did not abuse its discretion in using Portland as a locality because there was support that attorneys in the plaintiff's area could not litigate the case); *see also Makarios-Oregon, Ltd. Liab. Co. v. Ross Dress-For-Less, Inc.*, 293 Or. App. 732, 742 (2018) (holding it was not an abuse of discretion to award more than Oregon rates for San Francisco attorneys based on the complexity of the case and minor adjustments by attorneys and the district court).

Here, the Owens declare they "spoke to one or two local Baker City lawyers and one "wasn't available." Owen's Decl. ¶ 10. They also declare they "consistently got the advice, including from [the one or two] local attorneys [they contacted], that [they] should consult with lawyers in Portland, including Bob Bonaparte." *Id.* In response, Bruno Jagelski, a first-party insurance lawyer in Eastern Oregon, declares there are six firms in Eastern Oregon that were qualified to represent the Owens in this case. Jagelski Decl. ¶ 1. On this record, this Court finds

PAGE 15 – OPINION AND ORDER

that the Owens were not required to retain counsel in a particular locality—either Portland or Eastern Oregon—nor were they precluded from retaining counsel in either locality. Accordingly, Oregon in general is the best locality to judge the reasonableness of the fees.

Applying this standard, this Court concludes that an award of $550.00 per hour for Mr. Bonaparte and $475.00 per hour for Mr. Legette is appropriate. These hourly rates are in between the mean and 95th percentile for counsel of their qualifications.[4] For Oregon lawyers with over 30 years of experience, such as Mr. Bonaparte, the mean rate was $384.00 and the 95th percentile was $722.00. For Oregon lawyers with 21-30 years of experience, such as Mr. Leggatt, the mean rate was $371.00 and the 95th percentile was $600.00. For plaintiffs civil litigation excluding personal injury, the mean rate was $374.00 and the 95th percentile was $580.00. Rates of $550.00 and $475.00 per hour, respectively, represent a midpoint between those numbers and are commensurate with prior fee awards to Mr. Bonaparte in similar litigation. Bonaparte Decl. ¶¶ 12-13. With all these factors in mind and especially considering the attorneys' respected reputations, efficient settlement, and substantial recovery, this Court concludes that rates of $550.00 and $475.00 are appropriate.

The Owens' also seek rates for paralegals Brooke Calcangno and Rob Bonaparte of $175.00 and $150.00, respectively. Although these rates are slightly higher than the mean hourly rates for paralegals in Oregon, *see Poticny v. Movers & Packers Relocation Specialists LLC*, No. 3:22-CV-01243-IM, 2022 WL 18024218, at *9 (D. Or. Dec. 30, 2022), State Farm does not

---

[4] In the past, this court has typically limited the hourly rate requested to the 75th percentile of the OSB Economic Survey. *Coos Bay RV Invs., LLC v. Wheelhaus Inc.*, No. 3:21-CV-00448-AC, 2022 WL 508818, at *2 (D. Or. Feb. 3, 2022) (collecting cases). The 2022 OSB economic survey does not list the 75th percentile. Accordingly, this Court will utilize a rate between the mean and 95th percentile.

object to those amounts. Given that the Owens have provided adequate support for those rates for paralegal services, the Court will award the requested hourly rates.

      c.     **Modification to the Lodestar**

The Owens seeks a multiplier of 1.5 in this case. "Oregon law permits an enhancement of fees when it is supported by the facts and circumstances of the case." *Beck*, 2016 WL 4978411, at *22. An enhanced fee award may be appropriate where the recovery was an "exceptional success," and other favorable factors exist, including "the difficulty and complexity of the issues involved in this case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved." *Strunk v. Pub. Emples. Ret. Bd*, 343 Or. 226, 246 (Or. 2007).

A multiplier is not appropriate in this case. This Court has already concluded that the factors set forth in ORS 20.075(1) are neutral. Moreover, the remaining factors set forth in ORS 20.075(2) that are not captured by the lodestar calculation do not justify a departure from the lodestar calculation: (1) this case did not present a novel or difficult question, and overall the Owens' counsel spent a reasonable time zealously advocating the case and reaching an efficient settlement; (2) there is no evidence this case prevented Plaintiffs' counsel from taking other cases; (3) the Owens obtained a $435,000.00 settlement early in the litigation on a $550,000.00 claim and are now requesting $231,000.00 in attorney' fees; (4) the attorneys had a good relationship with their clients and are well-respected insurance litigators; (5) the attorneys worked on a contingent basis but were very likely to collect when accepting the case given the amount State Farm had paid in the coverage process, reducing the impact of this factor. *See Muller v. Country Mut. Ins. Co.*, 3:14-CV-01345-MO, 2017 WL 6209701, at *4 (D. Or. Dec. 8, 2017) (stating contingency factor was not impactful when the posture of the insurance case leads to an assumption of recovery). Accordingly, this Court declines to award a multiplier.

PAGE 17 – OPINION AND ORDER

### d.     Fees-on-fees

"Ordinarily, a party entitled to recover attorney's fees incurred in litigating the merits of a fee-generating claim also may receive attorney fees incurred in determining the amount of the resulting fee award." *Tri-Cnty. Metro. Transportation Dist. of Or. v. Aizawa*, 362 Or. 1, 3, (2017) (citations omitted).[5] However, this Court must still assess the reasonableness of the fee award under the factors set forth in ORS 20.075(2). Having already determined Plaintiffs' counsel's reasonable hourly rates, this Court concludes that the only remaining factor that is relevant is the total time spent litigating the fee petition.

Plaintiffs' counsel asserts that they spent 122.1 hours preparing the fee petition and reply in this case, representing 40.2 hours of Mr. Bonaparte's time, 81.4 hours of Mr. Leggatt's time, and 1.1 hours of Brooke Calcagno's time. This total time is not reasonable.

"A fee petition is a fairly standard document . . . Once an attorney puts one together, there is no need to reinvent the wheel when next turning to a court for fees." *S.C. by K.G. v. Lincoln Cnty. Sch. Dist.*, No. 6:20-CV-02277-MC, 2022 WL 1567229, at *3 (D. Or. May 18, 2022). Plaintiffs' counsel are highly experienced litigators, familiar with the subject matter of this lawsuit, and are well-versed in the requirements for filing a fee petition. To be sure, they were required to address State Farm's arguments that they were not entitled to fees at all. Even including that additional time, however, there is no justification presented for counsel to have spent over 122 hours preparing the fee petition and reply in this matter, which includes almost 70 hours of time spent on the reply alone. Pl. Reply. at 29. This is particularly true when it is

---

[5] State Farm did not present specific objections to the number of hours spent on fees-on-fees, as this issue was raised for the first time in reply. Nevertheless, "the district court [is] required to independently review plaintiffs' fee request even absent defense objections[.]" *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

PAGE 18 – OPINION AND ORDER

undisputed that counsel are highly skilled—and highly compensated—lawyers who are familiar with this area of the law. In sum, it is simply unreasonable for counsel to have spent so much time on this fee petition. *See, e.g.*, *A.P. v. Pasadena Unified Sch. Dist.*, 2021 WL 5249658 *7 (C.D. Cal. Aug. 24, 2021) ("[i]t is simply unreasonable for counsel to have spent … '26.7' hours on the Reply brief alone.").

Accordingly, based on the ORS § 20.075(a), this Court imposes a 50% reduction in the total number of hours spent in litigating this fee petition. *See S.C.*, 2022 WL 1567229, at *3 (finding only half the hours of a "quite bloated" fee petition were reasonable).

e. **Summary**

| MERITS FEES - LODESTAR | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Requested** | **Awarded** | **Requested** | **Awarded** | **Lodestar** |
| Bonaparte | 183.8 | 153.4 | $650 | $550 | $84,370.00 |
| Leggatt | 56.3 | 52.2 | $550 | $475 | $24,795.00 |
| Calcagno | 13.3 | 7.8 | $175 | $175 | $1,365.00 |
| Rob Bonaparte | 20.6 | 10.6 | $150 | $150 | $1,590.00 |
| **Total for Merits Litigation (no multiplier)** | | | | | **$112,120.00** |
| FEES-ON-FEES – LODESTAR | | | | | |
| **Timekeeper** | **Requested** | **Awarded** | **Requested** | **Awarded** | **Lodestar** |
| Bonaparte | 40.2 | 20.1 | $650 | $550 | $11,055.00 |
| Leggatt | 81.4 | 40.7 | $550 | $475 | $19,332.50 |
| Calcagno | 1.1 | .6 | $175 | $175 | $105.00 |
| **Total for Fees-on-Fees Litigation** | | | | | **$30,492.50** |
| **Total fee award** | | | | | **$142,612.50** |

PAGE 19 – OPINION AND ORDER

## CONCLUSION

Plaintiffs are awarded **$142,612.50** in attorney's fees.

DATED this 14th Day of June 2023.

ANDREW HALLMAN
United States Magistrate Judge